CV 12 2901

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------ X

DIAMOND FARLEY and ZAQUAN FARLEY,

                              Plaintiffs,      **COMPLAINT**

              -against-

THE CITY OF NEW YORK; P.O. JOHN/JANE DOES      ECF Case
# 1-10; the individual defendant(s) sued
individually and in their official            Jury Trial Demanded
capacities,

                              Defendants.

------------------------------------------

ROSS, J.

POLLAK, M.J

SUMMONS ISSUED

### PRELIMINARY STATEMENT

1.     This is a civil rights action in which plaintiffs

seeks relief for the violation of plaintiffs' rights secured by

42 U.S.C. §§ 1983 and the 1988; and the First, Fourth, Fifth,

and Fourteenth Amendments to the United States Constitution.

Plaintiffs' claims arise from an incident that arose on or about

March 11, 2011.  During the incident, the City of New York, and

members of the New York City Police Department ("NYPD")

subjected plaintiffs to, among other things, excessive force,

assault and battery, false arrest, unlawful search and seizure,

retaliation, conspiracy, fabricated evidence, malicious

prosecution, denial of a fair trial, denial of equal protection,

deliberate indifference, negligence, intentional and negligent

infliction of emotional distress, negligent hiring and

retention, supervision, training and instruction of incompetent and unfit employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.  Plaintiffs seek compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.    Plaintiffs invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.  Plaintiffs' notices of claim were duly filed on defendant City of New York within 90 days of the incident at issue, more than 30 days have elapsed since such filing and the City of New York has refused to settle plaintiffs' claims.  Moreover, this action has been filed within one year and 90 days of the incidents that are the basis of this claim.  Plaintiffs have satisfied all conditions precedent for the filing of this action.

4. Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343. Venue is proper here pursuant to 28 U.S.C. § 1391 because the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

5. Plaintiff Diamond Farley is a resident of the State of Ohio, City of Jamestown.

6. Plaintiff Zaquan Farley is a resident of the State of New York, Richmond County.

7. Diamond and Farley are siblings. The plaintiffs are African American.

8. At all times herein, defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated plaintiffs' rights as described herein.

9. At all times herein, defendant Police Officers John/Jane Does # 1-10 were New York City Police Officers, employed with the 129th Precinct, located in Richmond County, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

10. The individual defendants are sued in their individual and official capacities.

3

## STATEMENT OF FACTS

11.    On March 11, 2011, at and in the vicinity of 55
Bowen Street, Apt. # 318, Staten Island, New York, and the 120th
Precinct, Staten Island, New York, several police officers
operating from the 120th Precinct located in Richmond County, New
York, including upon information and belief, defendants P.O.
John/Jane Does # 1-10, at times acting in concert and at times
acting independently, committed the following illegal acts
against the plaintiffs.

12.    On March 11, 2011, at approximately 4:30 a.m. to
5:30 a.m., at and in the vicinity of 55 Bowen Street, Apt. #
318, Staten Island, New York ("the apartment"), defendants P.O.
John/Jane Does # 1-10, without either consent, an arrest
warrant, a lawful search warrant, probable cause, or reasonable
suspicion that plaintiffs (or any third person) had committed a
crime unlawfully entered the apartment.

13.    The defendants, including defendants P.O.
John/Jane Does # 1-10 broke into the plaintiffs' apartment.

14.    If the defendant officers had a search warrant,
it was issued upon the basis of extremely unreliable
information, the unreliability of which was withheld from the
issuing magistrate.

4

15.    If the defendant officers had a search warrant, they obtained it by failing to properly supervise and verify the reliability of an informant against NYPD policy and procedures to ensure the reliability of the confidential informant and the confidential informant's information before obtaining the warrant.

16.    Once defendants entered the apartment, the plaintiffs were not free to disregard the defendants' questions, walk away or leave the scene.

17.    The police had their firearms drawn.

18.    Plaintiff Diamond Farley was sleeping on an air mattress in the living room with her one year-old daughter when the police broke into the apartment.

19.    Diamond and her grandfather had come from Ohio to New York City to attend the funeral of a two-year old cousin, and were staying with Zaquan.

20.    Diamond was dressed in pajamas.

21.    Diamond tried to comfort her daughter who was afraid and crying from what the police were doing, but the defendant officers snatched Diamond's child from her and threw Diamond on the floor, twisted her arms behind her back, and placed handcuffs on her wrists.

5

22. The defendant officers' use of force caused Diamond to suffer injuries to her neck, back, arms and wrists. Diamond asked the defendant officers to loosen the handcuffs but they refused. This caused Diamond's hands to go numb. The defendants' use of force caused bruising and pain that lasted for several days.

23. Diamond was upset and crying.

24. The defendant police picked Diamond off the floor while in handcuffs and yelled at her to tell her where the drugs were. A police officer told her that if she did not tell them that she would never see her child again and refer her to the Administration of Children Services.

25. Diamond told the police that she did not know what they were talking about.

26. The police also set upon Zaquan. Zaquan had also been sleeping in the living room, while his grandfather had been asleep in the bedroom.

27. When the police came in they grabbed Zaquan and threw him on the ground, and placed his arms in an arm bar.

28. Zaquan was dressed in boxer shorts.

29. The defendant officers' use of force caused Zaquan severe pain in his back and wrists. Zaquan asked the defendant officers to stop hurting him, but they refused.

6

30. The defendant officers then placed handcuffs on Zaquan, pressing them deep into his wrists. This cut off Zaquan's circulation, and made his hands go numb.

31. The defendants' use of force caused bruising and pain to Zaquan's wrists, and pain to his back, arms, and wrists that lasted for several days.

32. Zaquan complained to the police that the handcuffs were too tight, and asked that they be loosened, but the police refused his requests.

33. The defendant officers yanked Zaquan up off the floor in handcuffs and interrogated him, demanding to know where the drugs were in the apartment.

34. Zaquan told the police that there were no drugs in the apartment.

35. During this time, the police also brought the plaintiffs' grandfather out from the bedroom in handcuffs.

36. The plaintiffs and their grandfather were made to sit on the couch, and then brought into outside hallway.

37. The defendants searched the entire apartment, ransacking it unnecessarily, and breaking appliances and furniture.

38. The defendants found no controlled substance, contraband, or weapons in the apartment or on any of the

occupants, including the plaintiffs, but falsely claimed that they found a controlled substance in a bedroom dresser drawer.

39. Instead of freeing the plaintiffs, the defendants falsely arrested the plaintiffs and took them to an awaiting police van. They released the plaintiffs' grandfather after approximately two hours.

40. The police kept Zaquan and Diamond in a police van for approximately three hours.

41. Zaquan complained about being unable to breath and having claustrophobia, but the police ignored him.

42. Diamond and Zaquan complained to the police that their handcuffs were on too tight, and asked that they be loosened, but the police refused their requests.

43. Eventually, the defendants drove the plaintiffs to the 120th Precinct for arrest processing.

44. The plaintiffs remained at the 120th Precinct for many hours before being removed, in chains, to Staten Island Central Booking for arraignment.

45. The plaintiffs waited at Central Booking many more hours waiting to be arraigned. During this time, in order to cover up their illegal actions, the defendant officers, pursuant to a conspiracy, initiated by a false sworn complaint, falsely and maliciously told the Richmond County District

8

Attorney's Office that the plaintiffs had committed various
crimes.

46.    The defendants made these false allegations,
despite the fact that they had no evidence that plaintiffs had
committed a crime, to cover up their misconduct, to meet
productivity goals and quotas, and to justify overtime
expenditures.

47.    However, as there was no basis to arrest Diamond,
much less prosecute her, the Richmond County District Attorney's
Office declined to prosecute Diamond and she was released
without see a judge, with the case against terminated in her
favor.

48.    Zaquan was arraigned and released, and eventually
his case was disposed of with a non-criminal disposition.

49.    The individual defendants acted in concert in
committing the above-described illegal acts against the
plaintiffs.

50.    The plaintiffs did not resist arrest at any time
during the above-described incidents.

51.    The plaintiffs did not violate any law,
regulation, or administrative code; commit any criminal act; cr
act in a suspicious or unlawful manner prior to or during the
above-described incident.

9

52.    The individual defendants did not observe the plaintiffs violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above-described incident.

53.    The individual defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their rights.

54.    Defendant City of New York through the NYPD and its officers, committed the following unconstitutional practices against the plaintiffs: (1) fabricating evidence against innocent persons; (2) unlawfully entering homes; (3) wrongfully arresting individuals based on pretexts and profiling; (4) using excessive force on individuals; and (5) arresting innocent persons in order to meet productivity goals, justify overtime, and over up waste.

55.    The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct involving the individual defendants, placing the defendant City of New York on notice of the

10

individual defendants' propensity to violate the rights of individuals.

56.    Indeed there is undue and illegal pressure to make arrests, regardless of their validity or value remains high throughout the NYPD.  This policy, practice and custom is in contravention of the true purpose of the law, which is to protect its citizens and not persecute them.

57.    Indeed, as reported in the Daily News on February 23, 2012 in an article entitled: *Cop Claims Bronx Precinct Ruled By Illegal System Of Zealous Arrest Quotas Color-Coded Reports Track Officer Performance: Lawsuit*, a NYPD officer has sued, charging the 42nd Precinct is run under a zealous quota system.

58.    As reported, a veteran NYPD police officer claims his Bronx precinct is ruled by an elaborate quota system that has created so much tension that police officers now guard the locker room.

59.    In a federal lawsuit, Officer Craig Matthews charges the illegal quotas in place at the 42nd precinct have led to harsh punishments and pitted police officers against each other.

60.    Central to the quota system are color-coded computer reports that categorize police officers by the number of arrests, summonses and stop-and-frisks they carry out.

61.    Officers who fail to meet the reports are highlighted in red.

62.    Black ink is used to denote police officers who are meeting the quotas, while silver is used to identify those who are meeting some quotas, the suit says.

63.    Matthews claims that officers who do not hit their numbers are subjected to a slew of punishments, including undesirable assignments and the loss of overtime.

64.    "Cops are pressured to make numbers and are punished for not making them, which means that innocent people are exposed to baseless summonses, arrests, and stop-and-frisks," said Matthews' lawyer, Christopher Dunn.

65.    Matthews' claims echo those of police officers who have come forward in the last three years to reveal the department's habit of illegally setting quotas and punishing police officers who do not meet them.

66.    A 14-year veteran of the force, Matthews says he was immediately irked by the quota system put in place in 2008. He says he complained about the system several times to his precinct's commanding officer.  He also brought his concerns to a Deputy Inspector.

67.    But the system continued unabated - and Matthews soon was the target of a campaign of retaliation, the suit says.

Matthews says he was humiliated by his supervisors in front of
other police officers and assigned especially dangerous duties,
such as transporting several prisoners without the standard
number of back-up officers. Matthews, who has received more
than 20 awards for his police work, also started receiving poor
evaluations. "If you come after me, I will come back after you
harder," a supervisor said, according to the suit.

68.   As reported in the article, it is not the first
time the 42nd Precinct has been hit by the quota controversy.
Last May, Officer Vanessa Hicks sued the NYPD, claiming she was
transferred because she did not conduct enough stop-and-frisks.
In February 2010, a precinct union delegate, Officer Frank
Palestro, was transferred after he reported corruption to
Internal Affairs, alleging that a female lieutenant ordered
police officers to write summonses for traffic violations they
did not witness, refused to take crime complaints and tampered
with a gun at a crime scene.

69.   The foregoing customs, policies, usages,
practices, procedures and rules of the City of New York and the
NYPD were the moving force behind the constitutional violations
suffered by the plaintiffs as alleged herein.

70.   In addition, the same day plaintiffs were
arrested the defendant officers also arrested Barbara Reed from

13

a neighboring apartment.  Ms. Reed and her minor child sued the defendant officers in the Eastern District of New York for violating their civil rights in an action entitled *Reed, et al. v. City of New York*, et al, 10-cv-3215-LTS, which the defendants settled for $60,000 and $15,000 payable to the plaintiffs.

### FIRST CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEERAL LAW)

71.    Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

72.    Defendants unlawfully stopped and searched plaintiffs without a warrant, or consent.

73.    Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

### SECOND CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER STATE LAW)

74.    Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

75.    Defendants unlawfully stopped and searched plaintiffs without a warrant, or consent.

76.    Accordingly, defendants are liable to plaintiffs for unlawful search and seizure under New York State law.

14

## THIRD CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

77.    Plaintiff Diamond Farley repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

78.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

79.    Accordingly, defendants are liable to plaintiffs for false arrest under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## FOURTH CLAIM

### (FALSE ARREST UNDER STATE LAW)

80.    Plaintiff Diamond Farley repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

81.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

82.    Accordingly, defendants are liable to plaintiff for false arrest under New York State law.

15

## FIFTH CLAIM

### (EXCESSIVE FORCE)

83.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

84.   The individual defendants' use of force upon plaintiffs was objectively unreasonable.

85.   The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiffs, since plaintiffs were unarmed, compliant, and did not resist arrest.

86.   Those defendants who did not touch the plaintiffs, witnessed these acts, but failed to intervene and protect plaintiffs from this conduct.

87.   Accordingly, the defendants are liable to plaintiffs for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SIXTH CLAIM

### (ASSAULT)

88.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

89.   Among other things as described above, defendants' search and seizure, battery, false arrest, and

16

excessive use of force against plaintiffs placed them in fear of imminent harmful and offensive physical contacts.

90.    Accordingly, defendants are liable to plaintiffs under New York State law for assault.

### SEVENTH CLAIM

### (BATTERY)

91.    Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

92.    Among other things as described above, defendants' search and seizure, false arrest, and excessive use of force against plaintiffs were illegal physical contacts.

93.    Accordingly, defendants are liable to plaintiffs under New York State law for battery.

### EIGHTH CLAIM

### (RETALIATION)

94.    Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

95.    Plaintiffs exercised free speech during the incident by, among other things, complaining about the individual defendants' unlawful acts.

96.    Plaintiffs' use of free speech was a motivating factor in the individual defendants' decision to falsely arrest them.

97.   Accordingly, the individual defendants are liable to plaintiffs under the First Amendment to the United States Constitution.

### NINTH CLAIM

### (FABRICATED EVIDENCE)

98.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

99.   The defendants are liable to plaintiffs because they intentionally conspired to fabricate evidence against the plaintiffs, depriving the plaintiffs of liberty without due process of law.

100.   In addition, the defendants used and presented the fabricated evidence to prosecute the plaintiffs.

101.   Further, the defendants were on notice that creating fabricated evidence is a clear violation of law because it well established that police officer who knowingly use false evidence to obtain a conviction act unconstitutionally.

102.   Furthermore, the defendants violated the law by making false statements of fact in a certification for determination of probable cause and/or a conviction, because they performed a function of a complaining witness.

### TENTH CLAIM

### (DENAIL OF A FAIR TRIAL)

18

103. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

104. The individual defendants are liable to the plaintiffs because they intentionally created false information likely to influence a fact finder's or jury's decision and forwarded that information to prosecutors, a grand jury, and/or court, thereby violating plaintiffs' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

### ELEVENTH CLAIM

### (FAILURE TO SUPERVISE)

105. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

106. The supervisor defendants are liable to plaintiffs because they supervised the subordinate individual defendants concerning above-mentioned unlawful acts against plaintiffs, and approved their unlawful actions.

### TWELFTH CLAIM

### (MALICIOUS PROSECUTION CLAIM UNDER FEDERAL LAW)

107. Plaintiff Zaquan Farley repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

19

108. The individual defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution(s) against plaintiff by knowingly, intentionally, and maliciously providing false statements to prosecutors and/or the court(s), which alleged plaintiff had committed various crimes.

109. The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

110. The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

111. The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff.

### THIRTEENTH CLAIM

### (MALICIOUS PROSECUTION CLAIM UNDER STATE LAW)

112. Plaintiff Zaquan Farley repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

113. The individual defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious

prosecution(s) against plaintiff by knowingly, intentionally, and maliciously providing false statements to prosecutors and/or the court(s), which alleged plaintiff had committed various crimes.

114.   The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

### FOURTEENTH CLAIM

### (42 U.S.C. § 1983 CONSPIRACY)

115.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

116.   Defendants are liable to plaintiffs because they agreed to act in concert to inflict an unconstitutional injury; and committed an overt act done in furtherance of that goal causing damage to plaintiffs.

### FIFTEENTH CLAIM

### (42 U.S.C. § 1983 VIOLATION OF EQUAL PROTECTION CLAUSE)

117.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

118.   Defendants City of New York has implemented and are continuing to enforce, encourage and sanction a policy, practice and/or custom of unconstitutional search warrant entries, false arrests, and malicious prosecutions of City

residents, including the plaintiffs, based solely on race and/or

national origin. These baseless search warrant entries, false

arrests and prosecutions by NYPD officers have and are being

conducted predominantly on Black and Latino individuals, on the

basis of racial and/or national origin profiling. As a result,

the NYPD's policy, practice and/or custom of baseless search

warrant entries, arrests and prosecutions by NYPD officers

violate the Equal Protection Clause of the Fourteenth Amendment.

The NYPD's constitutional abuses were and are directly and

proximately caused by policies, practices and/or customs

devised, implemented and enforced by the City of New York,

including: (a) the failure to properly screen, train and

supervise NYPD officers, (b) the failure to adequately monitor

NYPD officers and their search warrant entries, arrest and

prosecution practices, (c) the failure to sufficiently

discipline NYPD officers who engage in constitutional abuses,

and (d) the overt and tacit encouragement and sanctioning of,

and the failure to rectify the NYPD's unconstitutional

practices.

119. Each of the defendants has acted with deliberated

indifference to the Fourth Amendment rights of plaintiffs. As a

direct and proximate result of the acts and omissions of each of

the defendants, the plaintiffs' rights have been violated. By

acting under color of state law to deprive plaintiffs of their

rights under the Fourth Amendment, the defendants are in

violation of 42 U.S.C. § 1983, which prohibits the deprivation

under color of state law of rights secured under the United

States Constitution.

### SIXTEENTH CLAIM

#### (DELIBERATE INDIFFERENCE)

120.   Plaintiffs repeat and reallege all the foregoing

paragraphs as if the same were fully set forth at length herein.

121.   The City of New York has acted with deliberated.

indifference to the constitutional rights of those who would

come into contact with and who are prosecuted by NYPD officers

by: (a) failing to properly screen, train and supervise NYPD

officers, (b) inadequately monitoring NYPD officers and their

search warrant, arrest and prosecution practices, (c) failing to

sufficiently discipline NYPD officers who engage in

constitutional abuses, and (d) encouraging, sanctioning and

failing to rectify the NYPD's unconstitutional practices.

122.   As a direct and proximate result of the aforesaid

acts and omissions, the defendants have deprived the plaintiffs

of their Fourth and Fourteenth Amendment rights under 42 U.S.C.

§ 1983.

23

123.   The acts and omissions of the defendants explained herein were intentional, wanton, malicious, reckless and oppressive, thus, entitling the plaintiffs to an award of punitive damages.   In engaging in such conduct, the defendants acted beyond the scope of their jurisdiction, without authority under law, and in abuse of their powers.

### SEVENTEENTH CLAIM

### (FEDERAL MONELL CLAIM)

124.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

125.   Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiffs.

126.   Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

127.   Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.   The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.   Moreover, upon information and

24

belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

128.  Further, defendants City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would stop, arrest and prosecute innocent individuals, based cn pretexts and false evidence.

129.  In addition, the following are municipal policies, practices and customs: (1) fabricating evidence against innocent persons; (2) unlawfully entering homes; (3) wrongfully arresting individuals based on pretexts and profiling; (4) using excessive force on individuals; and (5) arresting innocent persons in order to meet productivity goals, justify overtime, and cover up waste.

### EIGHTEENTH CLAIM

#### (NEGLIGENCE)

130.  Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

131.  Defendants are liable to plaintiffs because defendants owed plaintiff a cognizable duty of care as a matter of law, and breached that duty.

25

## NINETEENTH CLAIM

### (NEGLIGENT SUPERVISION, HIRING, MONITORING TRAINING AND RETENTION OF UNFIT EMPLOYEES)

132. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

133. Defendant City of New York is liable to the plaintiffs because the occurrence and injuries sustained by plaintiffs, were caused solely by, and as a result of the malicious, reckless, negligent, and/or intentional conduct of defendant City of New York, and the NYPD, its agents, servants and/or employees, as set forth above, without provocation on the part of plaintiffs contributing thereto, specifically, the negligent and reckless manner in which said defendant hired, trained, supervised, controlled, managed, maintained, inspected and retained its police officers.

## TWENTIETH CLAIM

### (INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

134. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

135. That by virtue of the occurrence and defendants, individually and/or by their agents, servants and/or employees, negligently and/or intentionally inflicted emotional harm upon plaintiff.

26

136.    The defendants' actions against plaintiffs were extreme and outrageous and caused plaintiffs severe emotional distress.

137.    The defendants breached a duty owed to the plaintiffs that either unreasonably endangered plaintiffs' physical safety, or caused the plaintiff to fear for their own safety.

### TWENTY FIRST CLAIM

### (RESPONDEAT SUPERIOR)

138.    Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

139.    The individual defendants were acting within the scope of their employment as New York City Police Officers when they committed the above described acts against the plaintiffs, including falsely arresting, assaulting, and battering the plaintiffs.

140.    The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.

**WHEREFORE,** plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

      a.    Compensatory damages in an amount to be determined by a jury;

    b.    Punitive damages in an amount to be determined by

          a jury;

    c.    Costs, interest and attorney's fees, pursuant to

          42 U.S.C. § 1988; and

    d.    Such other and further relief as this Court may

          deem just and proper, including injunctive and

          declaratory relief.

DATED:    Brooklyn, New York
          June 8, 2012

MICHAEL O. HUESTON, ESQ.
*Attorney for Plaintiffs*
16 Court Street, Suite 3301
Staten Island, New York 11241
(718) 246-2900
mhueston@nyc.rr.com
By:

MICHAEL O. HUESTON